UNITED STATES OF AMERICA,                    )
                                             )
                          Plaintiff,         )        07 C 3169
                                             )
            vs.                              )        Judge Feinerman
                                             )
JAMES Y. SAPORITO and PAUL CARR,             )
                                             )
                          Defendants.        )

### MEMORANDUM OPINION AND ORDER

The United States brought this action against James Saporito and Paul Carr under the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9601 *et seq*., seeking to recover the costs the government incurred in

cleaning up hazardous substances at Crescent Plating Works, an electroplating facility in

Chicago.  In March 2008, the court denied Defendants' motion to dismiss.  Docs. 17-18

(Pallmeyer, J.).  On December 2, 2008, the court granted the parties' joint motion to bifurcate the

proceedings, with the first phase addressing whether Defendants are liable under CERCLA, and

the second addressing what cleanup costs, if any, the government may recover.  Doc. 60

(Pallmeyer, J.).

The two defendants then took divergent paths.  Carr and the government settled, and an

agreed consent decree was entered.  Docs. 142, 146.  Saporito did not settle, and the court

granted the government's motion for summary judgment, holding that Saporito was a

responsible party under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and thus liable for the

government's response costs.  684 F. Supp. 2d 1043 (N.D. Ill. 2010) (Pallmeyer, J.).  Saporito

and the government then conducted discovery concerning the propriety and amount of the government's cleanup activities and costs. Before the court is the government's motion for summary judgment in an amount certain, seeking an award of $2,564,709.86 plus statutory interest accruing since June 21, 2010. The government also seeks a declaratory judgment that Saporito is jointly and severally liable for "future" response costs, meaning all costs incurred after February 28, 2010—the latest date included in the government's cost calculations—plus statutory interest on those amounts. The government's motion is granted.

### Discussion

Familiarity with the court's liability opinion, which sets forth the pertinent facts, is assumed. CERCLA establishes a comprehensive response mechanism to mitigate environmental damages created by the release or threatened release of hazardous substances into the environment. *See Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 826-27 (7th Cir. 2007). CERCLA shifts the costs of cleanup to the parties responsible for the contamination. *See* 42 U.S.C. § 9607(a). "[L]iability under [CERCLA] is strict, joint and several. In other words, … the [government] may recover its costs in full from any responsible party, regardless of that party's relative fault." *Metro. Water*, 473 F.3d at 827.

A responsible party must reimburse "all costs of removal or remedial action incurred by the United States Government … not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A); *see Burlington N. & Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1878 n.6 (2009). The National Contingency Plan ("NCP") outlines specific steps the government must take before and during its response efforts. *See* 40 C.F.R. pt. 300. Governmental cleanup activities and their attendant costs are presumed to be consistent with the

NCP, *see United States v. E.I. DuPont De Nemours & Co.*, 432 F.3d 161, 178 (3d Cir. 2005) (en banc); *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir. 1992), and the responsible party bears the burden of proving otherwise, *see United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998); *Hardage*, 982 F.2d at 1442; *United States v. Ne. Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 747 (8th Cir. 1986).

Saporito has been found liable as a current owner of Crescent Plating facilities, and thus is a responsible party under section 107(a) of CERCLA. 684 F. Supp. 2d at 1063. He therefore is jointly and severally liable for all the government's costs unless he demonstrates that particular cleanup activities and their attendant costs were inconsistent with the NCP. Saporito challenged nearly all of the government's claimed cleanup costs, attorney fees, and oversight costs. His arguments are considered in turn.

## I.      Cleanup Costs

### A.      Statute of Limitations

CERCLA requires the government to file suit "within 3 years after completion of the removal action." 42 U.S.C. § 9613(g)(2)(A). Saporito asserts that because the government was authorized to make expenditures as early as December 2003, it had to file suit by December 2006. The argument is defeated by the statute's plain text. In saying that a cost recovery suit must commence within three years "after completion" of the removal action, § 9613(g)(2)(A) makes clear that the limitations period commences not when the government allocates funds to the removal action, but when the removal action is completed. The removal action at Crescent Plating was not completed until June 21, 2004, at the earliest, when the United States Environmental Protection Agency ("EPA") issued its final Pollution Report for the site. *See Illinois v. Grigoleit Co.*, 104 F. Supp. 2d 967, 975 (C.D. Ill. 2000) ("a 'removal' action is not

complete until a document has been issued which contains the final remedy selected for the site" or until the government ceases "to evaluate, assess and monitor the land") (collecting cases); *United States v. Cantrell*, 92 F. Supp. 2d 704, 716 (S.D. Ohio 2000) (statute of limitations did not commence until the final "walk-through" of the site was complete); *United States v. City of Aberdeen*, 929 F. Supp. 989, 993 (N.D. Miss. 1996) (statute of limitations did not commence until all work was complete and the site was photographed). The government's suit was filed on June 6, 2007, less than three years later, and thus was timely.

Saporito next contends that because his liability derives solely from his ownership of "filter press equipment, characterized as a separate 'facility' for CERCLA liability purposes," Doc. 160 at 6, and that because the filter press was dismantled by June 4, 2004, the government had to file suit by June 3, 2007. This contention rests on an incorrect premise. As the court held in its liability decision, the plating line was the "facility" subject to the government's cleanup action, and the filter press equipment owned by Saporito was merely a part of the relevant facility. 684 F. Supp. 2d at 1056-57; *see also id*. at 1053 (noting that Saporito did not dispute the plating line was a "facility"). Because the dismantling of the filter press was just one component of a single "removal action" at Crescent Plating, it had no independent impact on the statute of limitations. *See United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1230 n.9 (9th Cir. 2005) ("we analyze the EPA's activities in Libby as a single response action rather than a patchwork of discrete smaller actions"); *Colorado v. Sunoco, Inc.*, 337 F.3d 1233, 1240-41 (10th Cir. 2003) (rejecting argument that the statute of limitations applied separately to each component of the cleanup activity because "there will be but one 'removal action' per site or facility"); *Kelley v. E.I. DuPont De Nemours & Co.*, 17 F.3d 836, 843-44 (6th Cir. 1994) ("It is simply inconsistent with [CERCLA's] 'essential purposes' to require suit on each arguably independent removal

activity."); *Yankee Gas Servs. Co. v. UGI Utils., Inc.*, 616 F. Supp. 2d 228, 270 (D. Conn. 2009) ("courts have generally held that there can be only one removal … regardless of the number of phases in which the clean-up occurs"); *United States v. Nalco Chem. Co.*, 2002 WL 548840, at *10-11 (N.D. Ill. Apr. 10, 2002).

### B.      Commerce Clause

Saporito contends that CERCLA cannot authorize the government's recovery of costs because it is unconstitutional, reasoning that Congress exceeded its authority under the Commerce Clause by empowering the EPA to regulate environmental hazards that do not "have effects in more than one state" and to regulate "spills at a [single] Site." Doc. 160 at 9. The Second and Eleventh Circuits have rejected materially identical contentions. *See Frier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 202 (2d Cir. 2002) ("even wholly intrastate disposal of hazardous wastes can threaten interstate and foreign commerce, as those wastes can contaminate streams that run through landfills and feed into tributaries of navigable waters"); *United States v. Olin Corp.*, 107 F.3d 1506, 1511 (11th Cir. 1997) ("the regulation of intrastate, on-site waste disposal constitutes an appropriate element of Congress's broader scheme to protect interstate commerce and industries thereof from pollution"); *see also United States v. Domenic Lombardi Realty, Inc.*, 204 F. Supp. 2d 318, 328 (D.R.I. 2002) ("CERCLA's legislative history demonstrates that if left unregulated, on-site disposal of hazardous waste would unquestionably affect surface and groundwater, which in turn, would substantially affect the fishing and agriculture industries, as well as livestock production, recreation, and domestic and industrial water supplies"). Saporito does not and could not show that the Seventh Circuit would chart a different course. *See United States v. Vasquez*, 611 F.3d 325, 331 (7th Cir. 2010) (even where a statute "regulates solely intrastate activity," if the "regulatory means chosen are 'reasonably

adapted' to the attainment of a legitimate end under the commerce power," there is no constitutional problem). Saporito's Commerce Clause challenge accordingly is rejected.

## C.    Consistency with the NCP

Saporito contends that most of the government's cleanup activities were inconsistent with the NCP. To prove that a particular cleanup activity is inconsistent with the NCP, Saporito must demonstrate that the government acted arbitrarily and capriciously in pursuing the activity. *See Hardage*, 982 F.2d at 1442. Arbitrary and capricious review "is deferential," *United States v. Tarkowski*, 248 F.3d 596, 602 (7th Cir. 2001), and acknowledges that "determining the appropriate removal and remedial action involves specialized knowledge and expertise, [and therefore that] the choice of a particular cleanup method is a matter within the discretion of the EPA," *Ne. Pharm. & Chem. Co.*, 810 F.2d at 748. *See Wash. State Dep't of Transp. v. Wash. Natural Gas Co., Pacificorp*, 59 F.3d 793, 802 (9th Cir. 1995); *Hardage*, 982 F.2d at 1442 ("We … give deference to the EPA's choice of response action and will not substitute our own judgment for that of the EPA."). Saporito's various arguments may be categorized as follows.

### 1.    Proof of Substantial Threat of Harm and Causation

Saporito contends that the government "never demonstrated a substantial threat of harm" sufficient to justify the removal action or its attendant costs. Doc. 160 at 11. Specifically, he argues that the government failed to "tie" the substances and storage conditions at Crescent Plating to "any imminent, substantial real-world threat or danger, as opposed to hypothetical speculation." *Ibid*. In the liability phase, Saporito similarly argued that the government failed to prove that the relevant chemicals were hazardous, that the government failed to demonstrate an imminent and substantial danger to the public, and that there was no evidence of a release or threatened release. *See* Doc. 110 at 7-14. The court rejected these arguments, noting that (1)

Saporito failed to "offer anything that would contradict the government's evidence on the threat posed by Crescent Plating's condition"; (2) "it is undisputed that hazardous chemicals did enter the soil"; (3) "[t]here is no genuine dispute here; chemicals found at the site have been designated as hazardous by the EPA"; and (4) "it is undisputed that thousands of gallons of hazardous waste were being stored unsafely … [and] that there was a threatened release at the time of cleanup." 684 F. Supp. 2d at 1058-59.

"The doctrine of law of the case precludes reexamining a previous ruling (unless by a higher court) in the same case unless it was manifestly erroneous." *Starcon Int'l, Inc. v. NLRB*, 450 F.3d 276, 278 (7th Cir. 2006); *see also Moriarty v. Svec*, 429 F.3d 710, 722-23 (7th Cir. 2005). The principle applies with particular force where, as here, a successor judge is asked to reconsider a predecessor judge's rulings. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) ("in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge"). A successor judge should depart from a predecessor's decision only if he or she has a "conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009). Saporito does not acknowledge Judge Pallmeyer's rulings regarding the threat of harm posed by the hazardous substances at Crescent Plating, let alone demonstrate that those rulings were erroneous. It would be inappropriate to depart from those rulings where, as here, there is no indication either that the rulings were reached in error or that there are "considerations of fact or law that were [un]available when the previous" decision was made. *Vidimos, Inc. v. Wysong Laser Co., Inc.*, 179 F.3d 1063, 1065 (7th Cir. 1999).

The same holds for Saporito's argument that the government failed to prove causation. He contends that the government was required to demonstrate specifically that it was his particular equipment "from which there was a threatened release." Doc. 160 at 16. As Judge Pallmeyer noted in the liability ruling, however, "causation need not be proven under CERCLA." 684 F. Supp. 2d at 1060 (citing *United States v. Capital Tax Corp.*, 545 F.3d 525, 530 (7th Cir. 2008); *United States v. Hercules, Inc.*, 247 F.3d 706, 716 (8th Cir. 2001) ("once the requisite connection between the defendant and a hazardous waste site has been established … it is enough that response costs resulted from 'a' release or threatened release—not necessarily the defendant's release or threatened release")). Saporito intimates that Judge Pallmeyer's ruling was wrong, arguing that he cannot be forced to pay cleanup costs given that his filter press was not specifically identified as the cause of the government's cleanup action. Doc. 160 at 16-17. But it is Saporito who is wrong. Because Saporito owned necessary components (including, but not limited to, the filter press) of the plating line and the plating line was identified as the cause of the cleanup action, 684 F. Supp. 2d at 1051, 1056-57, the necessary connection between Saporito and the release has been established. *See Metro. Water*, 473 F.3d at 827 ("the [government] may recover its costs in full from any responsible party, regardless of that party's relative fault"); *Hercules*, 247 F.3d at 716.

## 2.     Workplace, Consumer Use, and Asbestos Exceptions

Saporito next contends that the EPA "has no inter-workplace removal rights, especially for consumer products that can be put to consumer use." Doc. 160 at 13. This argument is most easily understood as having three separate components.

The first component turns on what Saporito believes to be a prohibition against removal activities when the "release" involves consumer products in consumer use. Citing 42 U.S.C.

§ 9601(9), Saporito maintains that CERCLA's "definition of 'release' … 'does not include any consumer product in consumer use.'" *Ibid*. This supposed definition, in turn, prohibits the government from removing "useful" materials, or materials "consumed by business," during cleanup activities, and from predicating CERCLA liability on the release of such materials. *Id*. at 13-14. Because the government did not differentiate between chemicals and equipment that could be resold to electroplating businesses and chemicals, on the one hand, and equipment devoid of commercial value, on the other, Saporito argues that the government's removal activities were arbitrary and capricious.

This submission rests on a false premise. Section 9601(9) defines "facility," not "release." It states:

> The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline … well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or areas where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; *but does not include any consumer product in consumer use or any vessel*.

42 U.S.C. § 9601(9) (emphasis added). Contrary to Saporito's suggestion, CERCLA's definition of "release" makes no reference to consumer products in consumer use. *Id*. at § 9601(22). Saporito's argument regarding consumer use, therefore, "does excessive violence to the statutory language. The [consumer use] exception is for *facilities* that are consumer products in consumer use, not for consumer products contained in facilities." *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 750 (7th Cir. 1993) (emphasis altered); *see also Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 252 (5th Cir. 1998). Because neither the Crescent Plating plating line nor its buildings—the facilities from which the threat of release emanated—were consumer products in consumer use, Saporito cannot seek refuge in the "consumer product in consumer use"

exception. And because the government undertook its cleanup activities in response to a threatened release from actual facilities, and not releases from consumer products in consumer use, Saporito's attempt to invoke the exception fails.

The second component of Saporito's argument submits that CERCLA does not authorize removal actions where the release results in exposure exclusively within a workplace. The court rejected this submission during the liability phase, 684 F. Supp. 2d at 1058 n.4, and rightly so. CERCLA excludes from the statutory definition of "release" "any release which results in exposure to persons solely within a workplace, *with respect to a claim which such persons may assert against the employer of such persons*." 42 U.S.C. § 9601(22)(A) (emphasis added). As Judge Pallmeyer explained, Saporito cannot benefit from this exclusion because this case does not involve a claim by a person against her employer. 684 F. Supp. 2d at 1058 n.4. Saporito reiterates his position during the cost phase, this time relying on language in 40 C.F.R. § 300.5 identical to the language from 42 U.S.C. § 9601(22)(A) that Judge Pallmeyer considered. Saporito's effort to pour old wine into a new bottle is rejected. *See Gilbert*, 591 F.3d at 902.

The third component of Saporito's argument submits that the government's removal of loose asbestos from the ground near the loading dock was arbitrary and capricious because (1) the asbestos was once part of Crescent Plating's structures and (2) its release would result in exposure only within the building. In support, Saporito cites 42 U.S.C. § 9604(a)(3)(B), which states: "The President shall not provide for a removal or remedial action under this section in response to a release or threat of release from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures." The government concedes that it could not predicate a removal action exclusively on the presence or

release of asbestos insulation within a building, but argues that it may remove asbestos found on the floor while removing other hazardous substances.

The government is correct. The removal activities at Crescent Plating overwhelmingly were directed at the "thousands of gallons of hazardous waste … being stored unsafely" in a deteriorating, unheated, and unsecured building. 684 F. Supp. 2d at 1059. The incidental removal of loose asbestos while cleaning up that waste was permissible, not arbitrary and capricious. *See United States v. Odabashian*, 2005 WL 742158, at *4 n.3 (W.D. Tenn. Mar. 29, 2005) (responsible parties may have to pay for certain cleanup activities "incidental to the removal of hazardous substances," particularly where the defendant "presented no evidence that the removal of [the complained of] pollutants and contaminants was not incidental to the removal"); *United States v. W.R. Grace & Co.-Conn.*, 280 F. Supp. 2d 1149, 1175 (D. Mont. 2003) ("So long as EPA's response action was undertaken in response to releases and threats of releases associated with mined and processed vermiculite, the alleged incidental removal of some naturally occurring asbestos is not inconsistent with the NCP."); *see also* 40 C.F.R. § 302.4 (listing asbestos as a "hazardous substance" under CERCLA).

Saporito's sole authority to the contrary is inapposite. In *Sycamore Industrial Park Associates v. Ericsson, Inc.*, 546 F.3d 847 (7th Cir. 2008), Ericsson sold Sycamore a building that contained asbestos. Decades after the purchase, Sycamore removed the asbestos and sought to hold Ericsson liable under CERCLA for its removal costs. The Seventh Circuit rejected the claim because Sycamore failed to present evidence that asbestos was threatening release outside the building and because any asbestos emissions within the building could not impose CERCLA liability. *Id*. at 852-53. As Judge Pallmeyer correctly held, *Sycamore* is "readily distinguishable" from this case. 684 F. Supp. 2d at 1059. The *Sycamore* plaintiff sought

removal costs related to asbestos materials that were stored within a secure building and did not threaten release. Here, there is "undisputed evidence of the deteriorating state of Crescent Plating's floor," *ibid.*, and evidence that asbestos was lying next to a loading dock entrance, was being stepped in and spread around, and was at risk of being carried or tracked out of the building. Doc. 163 at ¶ 30. The removal of the asbestos was incidental to and only a small fraction of the removal activities at Crescent Plating, by contrast to the situation in *Sycamore*, where cleaning up asbestos was the principal focus of the cleanup.

### 3.    Reportable Quantities

Saporito contends that the government cannot recover costs because it did not determine that the hazardous substances at Crescent Plating were present in reportable quantities, meaning quantities that presented an imminent danger to human health. Unless such a determination is required and made, he submits, the government could remove "vitamins from a medicine chest, dig up soil around a home, or eliminate flaking paint from a garage door" because vitamins, soil, and paint contain minerals that can be deemed hazardous substances. Doc. 160 at 15.

As Saporito acknowledges, Judge Pallmeyer twice rejected this argument. Doc. 18 at 8 (citing cases); 684 F. Supp. 2d at 1058. He offers nothing to justify a different result here. To the contrary, the law clearly provides that the "reportable quantities" concept has no relation to when a government can take a removal action. CERCLA references reportable quantities only to indicate when a "person in charge of … an onshore facility shall" report a release to the government. 40 C.F.R. § 302.6(a); *see Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1168-69 (10th Cir. 2004). At the same time, CERCLA authorizes the government to effectuate a response action "if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant." 42 U.S.C. § 9604(e)(1),

(e)(3)(D).  The "reasonable basis" requirement is satisfied even if the threatened release is not a

reportable quantity and instead involves only a "thimbleful" or a "flake" of hazardous substance.

*Tarkowski*, 248 F.3d at 599 ("there is nothing in [CERCLA] about [the] magnitude" of an

actionable release).

Saporito's concern that this holding would grant "near-unlimited police power" to the

EPA is unwarranted.  The government may access property in non-emergency conditions only if

the owner consents or, if consent is denied, a judicial order authorizes access.  *See id*. at 599-600

(refusing to issue a judicial order where there was not "even a slight environmental hazard"); 42

U.S.C. § 9604(e)(5)(B)(i) (courts may allow government access to property "unless under the

circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse

of discretion, or otherwise not in accordance with law").  Here, Saporito personally granted the

government access to the Crescent Plating site.  Doc. 108-4 at 77.

### 4.     Saporito's Lack of Funds

Saporito argues that because the government was aware that he could not reimburse it for

cleanup costs and would declare bankruptcy if costs were sought, the government "acted

arbitrarily and capriciously in failing to consider cost, and by choosing remedial efforts that

plainly were not cost-effective."  Doc. 160 at 17.  The fact that Saporito has limited funds or is

teetering near the edge of bankruptcy does not render improper the government's cleanup

activities or arbitrary its judicial enforcement efforts.  The "recoupment mandate interjects a

valuable deterrence element into the CERCLA scheme, ensuring that responsible parties will be

held accountable for their environmental misdeeds" even if they seek bankruptcy protection.

*United States v. Nicolet, Inc.*, 857 F.2d 202, 209-210 (3d Cir. 1988) (noting that "it was

Congress' intent that [CERCLA] proceedings such as this be exempt from the [Bankruptcy

Code's] automatic stay [provision] up to and including entry of a monetary judgment"); *see also Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1040 (W.D. Tenn. 2003) ("in evaluating whether to favor slightly the interests of CERCLA (and thus the creditor) or bankruptcy law (and thus the debtor), the fact that debtors may abuse bankruptcy discharges to hide from liability presents more of a concern than the likelihood that the EPA (or other creditors) will abuse their power"); *United States v. Acme Solvents Reclaiming, Inc.*, 154 B.R. 72, 74-75 (N.D. Ill. 1993). It follows that Saporito's financial condition and possible bankruptcy do not bear on the propriety of the government's response and enforcement actions. *See City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) (responsible party's bankruptcy does not affect suits to recover response costs because "[t]hey provide an effective deterrent to violators, who will be forced to pay for the government's costs in responding to their violations. The need to continue such deterrent actions, despite the pendency of a bankruptcy action, furthers the purpose" of CERCLA and bankruptcy law); *see also Hardage*, 982 F.2d at 1443 (removal actions need not be cost effective); *United States v. Martell*, 844 F. Supp. 454, 459 (N.D. Ind. 1994) ("CERCLA does not require the Government to mitigate response costs").

### 5.     Availability of Alternative Remedies

Saporito incorrectly maintains that the government's failure to consider alternative remedies prevents the recovery of costs. Doc. 160 at 17 n.5. Courts may not second guess the government's response actions unless the responsible party can demonstrate that the actions were arbitrary and capricious, and thus inconsistent with the NCP. As the Eighth Circuit explained, "the appropriate removal and remedial action involves specialized knowledge and expertise, [and therefore] the choice of a particular cleanup method is a matter within the discretion of the EPA." *Ne. Pharm. & Chem. Co.*, 810 F.2d at 748; *see also Wash. Natural Gas*,

59 F.3d at 802; *Hardage*, 982 F.2d at 1442 ("We … give deference to the EPA's choice of response action and will not substitute our own judgment for that of the EPA.").  And as discussed throughout this opinion, Saporito has failed to demonstrate that the government's cleanup activities were arbitrary and capricious.

### 6.    Settlement and Consent Decree with Defendant Carr

Saporito suggests that the government acted improperly by settling with Defendant Carr (Docs. 142, 146) in a way that released Carr from any obligation to pay response costs.  Saporito's suggestion is without merit.  The consent decree with Carr provides, in relevant part: "Based on the analysis of Financial Information submitted by [Carr], the United States has determined that [Carr] lacks the present and foreseeable future ability to reimburse the United States for any Response Costs.  Therefore, this Consent Decree does not require [Carr] to pay any Response Costs."  Doc. 146 at 10.  CERCLA permitted the government to settle with Carr on those terms.  *See* 42 U.S.C. § 9622(g)(7).

Carr's settlement and consent decree do not impact Saporito's liability to the government.  CERCLA provides that a "person who has resolved its liability to the United States … in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.  Such settlement does not discharge any other potentially responsible persons unless its terms so provide, but it reduces the potential liability of others by the amount of the settlement."  42 U.S.C. § 9613(f)(2).  If the government receives less than complete relief from the settling party, "the United States may bring an action again[st] any person who has not so resolved its liability."  *United States v. Iron Mountain Mines*, 724 F. Supp. 2d 1086, 1092 (E.D. Cal. 2010); *see also United States v. Occidental Chem. Corp.*, 200 F.3d 143, 149-50 (3d Cir. 1999).  Here, Saporito refused to settle with the

government because he did not wish to disclose his and his spouse's personal financial information, fearing, for unspecified reasons, that the government would abuse that information. Doc. 161-8 at ¶ 11.  Under these circumstances, the government was entitled to sue Saporito for its outstanding response costs.

## II.     Attorney Fees and Oversight Costs

The "costs of removal or remedial action" recoverable under 42 U.S.C. § 9607(a)(4)(A) include attorney fees and oversight costs the government incurs in overseeing removal and in pursuing enforcement activities.  *See United States v. Dico, Inc.*, 266 F.3d 864, 878-79 (8th Cir. 2001); *Chapman*, 146 F.3d at 1175; *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1417 (W.D. Mich. 1988).  As with other removal costs, attorney fees and oversight costs cannot be recovered to the extent they are inconsistent with the NCP.  *See Dico*, 266 F.3d at 879 ("any attorney fees that were not reasonably incurred would be held inconsistent with the NCP"); *Hardage*, 982 F.2d at 1443 ("As long as the government's choice of response action is not inconsistent with the NCP, its costs are presumed to be reasonable and therefore recoverable."). The burden on this point rests with the responsible party.  *See Dico*, 266 F.3d at 879 (party opposing the government's motion for costs "bears the burden … of proving that the government's requested recovery costs, whether attorney fees or otherwise, are inconsistent with the NCP").

Citing 42 U.S.C. § 9604(c)(1)(C), Saporito argues that the government may not recover attorney fees and oversight costs to the extent they were incurred more than twelve months after the date of the government's initial response, or to the extent they push the government's overall costs over $2 million.  Doc. 160 at 18.  Saporito is incorrect.  Section 9604(c)(1)(C) provides that unless the "continued response action is otherwise appropriate and consistent with the

remedial action to be taken[,] obligations from the Fund, *other than those authorized by subsection (b) of this section*, shall not continue after $2,000,000 has been obligated for response actions or 12 months has elapsed from the date of initial response to a release or threatened release of hazardous substances."  42 U.S.C. § 9604(c)(1)(C) (emphasis added).  Subsection (b), in turn, references oversight and legal costs:

> Whenever the President is authorized to act pursuant to subsection (a) of this section, or whenever the President has reason to believe that a release occurred or is about to occur, … the President may undertake such planning, *legal*, fiscal, economic, engineering, architectural, and other *studies or investigations* as he may deem necessary or appropriate to plan and direct response actions, *to recover the costs thereof, and to enforce the provisions of this chapter*.

42 U.S.C. § 9604(b)(1) (emphasis added).  It follows that oversight and legal activities, and their attendant costs, do not offend § 9604(c)(1)(C) if they run beyond the statute's presumptive twelve-month limit or push beyond the statute's presumptive $2 million ceiling.  *See Chapman*, 146 F.3d at 1174 (section 9604(b)(1) "entitled [the government] to recover all litigation costs, including attorney fees" where nine years had passed since EPA first began assessment of and response to releases at defendant's property); *United States v. Allied Battery Co., Inc.*, 2000 WL 34335806, at *7 (N.D. Ala. Jan. 14, 2000) ("although the actions taken under section 9604(b) are considered to be part of the removal action, they are not subject to the 12-month funding limitation imposed by 42 U.S.C. § 9604(c)(1)").  And it bears mention that the government cleanup activities covered by § 9604(c)(1)(C) and not carved out by § 9604(b)(1) were completed for under $2 million and in less than twelve months.  Doc. 151 ¶¶ 12-13, 16, 21.

Saporito next challenges the recovery of attorney fees because (1) the government failed to provide a substantive description of the activities being billed, and therefore failed to demonstrate that the fees were incurred in furtherance of the litigation; (2) the government's

"time records appear to be rather inflated"; (3) the government seeks fees incurred before the suit was filed; and (4) the government "knew at the outset" that Saporito would seek bankruptcy protection and thus evidenced "poor billing judgment" in pursuing this lawsuit against him. Doc. 160 at 18-19. The third and fourth arguments plainly have no merit. As noted above, enforcing CERCLA against and seeking cleanup costs from a responsible party near bankruptcy is not inconsistent with the NCP. Moreover, CERCLA expressly permits the government to engage in pre-litigation legal activities, including investigation of the offending sites and planning for future response and enforcement activities, *see* 42 U.S.C. § 9604(b)(1), both of which occurred here, Doc. 162 at 18; Doc. 163 at ¶ 14. *See United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1508 (6th Cir. 1989) ("the government must organize its response efforts in accordance with the severity of the danger posed").

Saporito's argument that the government "inflated" its fees also fails. He asserts that attorney fees of one million dollars are unreasonable because the case "involved little discovery (five people were deposed) or other time and labor; non-esoteric issues; and where Plaintiff's fees are not really billed fees at all, counsel for [the government] are salaried government employees." Doc. 160 at 19. He also maintains that the time reasonably necessary to complete motions, expert discovery, and depositions was far less than what the government billed, and that the government cannot recover costs for lawyers who did not enter an appearance in this case. Doc. 161 at ¶¶ 14-15. A responsible party in Saporito's position must offer "evidence to counter or otherwise challenge the extensive government documentation of its direct costs," and cannot merely offer "vague challenges to the validity of those costs based on the government's evidence." *R.W. Meyer, Inc.*, 889 F.2d at 1508. Yet Saporito's challenges are vague and devoid of evidentiary or legal support, consisting entirely of bald assertions and naked inferences.

Because the government's attorneys have been involved in this matter since 2004, and because Saporito has aggressively litigated numerous issues in the case, Doc. 163 at ¶ 14, his contention that the government "inflated" its fees is rejected.

Also rejected is Saporito's complaint that the government did not provide original invoices or detailed descriptions of its attorneys' activities. The governing regulation provides:

> During all phases of response, the lead agency shall complete and maintain documentation to support all actions taken under the NCP and to form the basis for cost recovery. In general, documentation shall be sufficient to provide the source and circumstances of the release, the identity of responsible parties, the response action taken, accurate accounting of federal, state, or private party costs incurred for response actions, and impacts and potential impacts to the public health and welfare and the environment.

40 C.F.R. § 300.160(a)(1). "The regulation does not define 'accurate accounting' and does not elaborate on what is meant by 'sufficient' documentation." *Findett*, 75 F. Supp. 2d at 991 ("The NCP simply does not contain any specific standards concerning the documentation of costs."). But the cases hold that the government can satisfy its burden by submitting affidavits from government employees and summary reports of the underlying cost documentation. *See Hardage*, 982 F.2d at 1442-43 ("The documentation included affidavits of various EPA and Department of Justice (DOJ) employees charged with accumulating the cost data. These affidavits were supported by summaries of cost data accumulated in connection with the Hardage site, and the source of that data. The district court held, and we agree, that the documentation offered in support of the government's response cost claim established a prima facie case that the government is entitled to response costs in the amount stated above."); *W.R. Grace*, 280 F. Supp. 2d at 1181 (noting that there is no requirement that the government include "any particular document or type of document in their analysis of response cost documentation"

and that "there is no specific standard regarding the amount of detail that must be included in cost documentation.  Courts have rejected arguments that the lack of descriptive information on a time sheet or travel voucher regarding the underlying task the employee performed invalidates the documentation") (citing cases); *Findett*, 75 F. Supp. 2d at 992 (collecting cases).

Here, the government submitted sufficient evidentiary support for its attorney fees and oversight costs.  It offered an itemized cost summary report of employee timesheets, travel vouchers, contractor invoices, contractor invoice approval forms, and U.S. Treasury schedules. Doc. 151 at ¶¶ 34, 51, 56-57.  It submitted declarations from an EPA supervisor who oversaw EPA and contractor efforts at Crescent Plating, and from EPA and DOJ accountants who further discussed, itemized, and summarized the costs incurred by the government.  Doc. 151-1; Doc. 151-2; Doc. 151-3; Doc. 151-31.  CERCLA requires nothing more.

Saporito contends that the government cannot recover its attorney fees because it failed to comply with Local Rule 54.3, which imposes stringent disclosure and documentation requirements on parties seeking to recover such fees.  Local 54.3 does not govern this case. Section 9607(a)(4)(A) provides that "'notwithstanding any other provision or rule of law,' a private party will reimburse the United States for all costs incurred." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998) (quoting 42 U.S.C. § 9607(a)(4)(A)). The "notwithstanding" clause "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993).  It follows that the government need not comply with Local Rule 54.3 when seeking to recover attorney fees in a CERCLA action.  And even if Local Rule 54.3 had some application to the attorney fee component of a CERCLA cost recovery suit, the court would exercise its discretion to excuse formal compliance with the local rule given the

circumstances of this case and Saporito's full opportunity to contest the claimed attorney fees. *See Portman v. Andrews*, 249 F.R.D. 279, 283 (N.D. Ill. 2007) ("to require the filing of a detailed fee petition and further litigation on that petition would do nothing more than needlessly impose additional costs upon [the government] without a corresponding benefit").

Finally, Saporito argues that because the government advanced two theories of liability during the liability phase—"Saporito-as-operator" and "equipment-as-facility"—and because only the second theory prevailed at summary judgment, the government may recover only those fees related to the second theory. Doc. 160 at 20. And because the government first set forth the "equipment-as-facility" after May 2009, Saporito continues, it may not recover attorney fees incurred before that date. Saporito cities no authority for his position, which forfeits the point. *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (where party "cited no legal authority to the district court to support the proposition … the argument is waived").

The argument fails on the merits in any event. Where certain claims fail and others succeed, the prevailing party still may recovery attorney fees "for unsuccessful claims when those claims involved a common core of facts or related legal theories." *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998); *see also Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987) ("time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation"). As the Seventh Circuit has explained, "[f]or tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. … [I]f he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided

that the one or ones that succeed give him all that he reasonably could have asked for." *Lenard v. Argento*, 808 F.2d 1242, 1245-46 (7th Cir. 1987).

Here, the government advanced two theories of liability, both involving a common core of facts (the threatened release of hazardous substances from Crescent Plating) and law (joint and several liability under 42 U.S.C. § 9607).  Although Saporito was found liable under only one of the theories, the government received all the relief it sought and consequently may recover all the attorney fees it incurred.

## III.    "Future" Costs

The cleanup costs, attorney fees, and oversight costs discussed above were incurred through February 28, 2010.  The government also seeks a declaration that Saporito is jointly and severally liable for all "future" costs (*i.e.*, costs incurred after February 28, 2010) to the extent they are not inconsistent with the NCP, plus statutory interest.  That request is granted.

The law provides for, and in fact requires, a declaration as to future response costs.

CERCLA provides:

> In any ... action described in this [civil proceedings] subsection, the court *shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages*.  A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action.

42 U.S.C. § 9613(g)(2) (emphasis added); *see Burlington N. & Santa Fe Ry.*, 129 S. Ct. at 1878 ("Once an entity is identified as a [Potentially Responsible Party], it may be compelled to clean up a contaminated area or reimburse the Government for its past *and future* response costs.") (emphasis added).  Accordingly, "if a plaintiff successfully establishes liability for the response

costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions." *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010); *see also F.P. Woll & Co. v. Fifth & Mitchell Street Corp.*, 326 Fed. Appx. 658, 661 (3d Cir. 2009) ("The entry of a declaratory judgment ensured Woll prompt reimbursement of reasonable response costs incurred in the future, while protecting Eaton and Fifth Street from an excess judgment in the event further response costs were not incurred.  Thus, we agree with the Court's grant of declaratory, rather than additional monetary, relief."); *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004) ("In the context of a [CERCLA] action, this Court has held that the entry of a declaratory judgment as to liability is mandatory.") (internal quotation marks omitted); *Kelly v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) ("The entry of declaratory judgment as to liability is mandatory.  The fact that future costs are somewhat speculative is no bar to a present declaration of liability.") (citations and quotation marks omitted); *City of Gary, Ind. v. Shafer*, 683 F. Supp. 2d 836, 854 (N.D. Ind. 2010) ("Once liability is established under section 107(a) of CERCLA, section 113(g) of CERCLA requires entry of a declaratory judgment as to liability for future response costs.") (citing cases).  If any future cost recovery action is brought, the government will be required to identify the cleanup activities and their attendant costs, and will be entitled to reimbursement only to the extent those activities and costs are not inconsistent with the NCP.  *See Hardage*, 982 F.2d at 1446 ("a declaratory judgment under CERCLA § 113(g)(2) determines liability for future response costs, not recoverability, and therefore, a challenge to the future response costs—*i.e.*, that the response actions giving rise to the costs are inconsistent with the NCP—must be allowed").

**Conclusion**

For the foregoing reasons, the government's motion for judgment in an amount certain is granted. James Saporito is jointly and severally liable to the United States in the amount of $2,564,709.86, plus statutory interest accruing since June 21, 2010. In addition, the court declares that Saporito is jointly and severally liable for Crescent Plating response costs incurred after February 28, 2010, to the extent those costs are not inconsistent with the NCP, plus statutory interest. The court acknowledges that this is a harsh result, but CERCLA and the binding precedents that interpret and apply the statute impose a relatively unforgiving regime on individuals like Saporito found to be responsible parties under 42 U.S.C. § 9607(a).

June 22, 2011        _____

                                             United States District Judge